**FILED**

April 21, 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____  JU

DEPUTY

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 5:21-cr-494-OLG** |
| **JONTE DESEAN TURNER,** | |
| *Defendant.* | |

## MEMORANDUM OPINION

On November 17, 2021, a grand jury indicted defendant Jonte Turner on three counts: (1) knowingly using and possessing firearms in furtherance of a drug trafficking crime ("Count 1"); (2) receiving firearms while knowing he was under indictment ("Count 2"); and (3) knowingly and intentionally possessing marijuana with intent to distribute ("Count 3"). Indictment, ECF No. 3. That same day, the government moved to detain Turner pending trial. ECF No. 9. One month later, Turner was arrested. 12/17/21 Min. Entry. Magistrate Judge Henry J. Bemporad heard the government's motion on December 21, 2021. Judge Bemporad orally ordered that Turner be committed to a halfway house pending trial. 12/21/21 Tr. 25:17–24, ECF No. 25. The government then moved to stay Judge Bemporad's order. ECF No. 15. Chief Judge Orlando Garcia granted the motion and stayed the order pending *de novo* review. ECF No. 16.

On March 29, 2022, Chief Judge Garcia referred this issue to the undersigned. 03/29/22 Min. Entry. The Court heard arguments by both parties on April 1, 2022. Upon consideration of the proffered evidence, the government's motion, and supplemental briefing by both parties, the Court granted the government's motion and ordered Turner detained pending trial. Set forth below are written findings and reasons underlying the Court's order. *See* 18 U.S.C. § 3142(i)(1)

(requiring that a detention order "include written findings of fact and a written statement of the reasons for the detention").

## I.    BACKGROUND

The government proffers the following factual allegations about Turner's conduct.[1] Before the federal charges in this action, Turner had been arrested for a bevy of state-law charges. On July 1, 2016, Turner was arrested for hindering a person's apprehension or prosecution. *See* Tex. Penal Code § 38.05(a). Turner did not attend several required court appearances for this charge. ECF No. 29 at 3. On February 27, 2017, Turner was arrested for evading arrest. *See* Tex. Penal Code § 38.04. As before, Turner failed to attend a required court appearance for this charge. According to Turner, he missed these appearances because his attorney—who had passed away— was responsible for notifying him of required court dates. Turner argues that he did not know of his attorney's death until after he had missed the required appearances. On April 19, 2018, Turner was arrested for failure to identify. *See* Tex. Penal Code § 38.02. Finally, on May 24, 2018, Turner was arrested for murder. *See* Tex. Penal Code § 19.02(b)(1). Turner was released on February 26, 2020, after paying a $500,000 bond. One of Turner's bond conditions mandated that he not possess a firearm.

That brings about the events in this case. On January 27, 2021, San Antonio Police Department ("SAPD") officers responded to a shots-fired call in a local apartment complex. The caller was a young woman living in an apartment with a small child. After questioning the caller, SAPD officers learned that she had heard a gunshot and had noticed a bullet hole in a wall she

---

[1] These allegations are taken from the indictment, the pretrial services report, and testimony presented at the December 17, 2021 and April 1, 2022 hearings. An agent from the Bureau of Alcohol, Tobacco, and Firearms presented testimony at the April hearing regarding these facts.

shared with a neighbor.  SAPD officers entered the caller's apartment, discovered the bullet hole, and recovered portions of the bullet.

Turner lived in that neighboring apartment.  After questioning Turner, searching his person, and conducting a protective sweep of Turner's apartment, officers found several mobile phones, thousands of dollars in cash, and several firearms located in plain view.  Officers then obtained a search warrant.  Officers searching Turner's apartment discovered six firearms, ammunition, roughly 4.8 pounds of marijuana, and various scales and vacuum sealers containing marijuana residue.  Officers then arrested Turner.  Later, officers checked the serial numbers on the seized firearms against federal databases.  One firearm—a 5.56 caliber ATI Omni Hybrid rifle—was purchased on March 19, 2020.

## II.    LEGAL STANDARD

The Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, authorizes the detention of a defendant in two situations.  First, the government may request pretrial detention if the charged offense falls into one of five enumerated categories, including a "crime of violence" or a felony involving the possession or use of a firearm.  18 U.S.C. § 3142(f)(1).  Second, the government may seek pretrial detention when the case involves "a serious risk" that the defendant will flee or "will attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror."  *Id.* § 3142(f)(2).

If the Bail Reform Act authorizes pretrial detention, the judicial officer must hold a hearing to determine whether any conditions of release would reasonably assure the appearance of the defendant as required and the safety of any other person and the community.  *Id.* § 3142(f).  A judicial officer may order pretrial detention upon finding by a preponderance of the evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as

required" or by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e)–(f); *see United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985).

For crimes committed under 18 U.S.C. § 924(c), the Bail Reform Act establishes a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community. *Id.* § 3142(e)(3)(B). This presumption arises upon probable cause to believe that the crime has been committed—e.g., through an indictment. *See United States v. Sims*, 801 F. App'x 324, 324 (5th Cir. 2020); *United States v. Farguson*, 721 F. Supp. 128, 129–31 (N.D. Tex. 1989). This rebuttable presumption "shifts to the defendant only the burden of producing rebutting evidence." *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992). The government retains the burden of persuasion. *Id.*

A court must consider the following factors to determine whether conditions or a combination of conditions would reasonably assure the defendant's appearance and the public's safety:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of Section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense of arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, state, or local law; and

> (4) the nature and seriousness of the danger to any person or the
> community that would be posed by the person's release.

18 U.S.C. § 3142(g).

A district court reviews a magistrate's pretrial-release order *de novo* and "must make an independent determination of the proper pretrial detention or conditions for release." *Rueben*, 974 F.2d at 585.

### III.   DISCUSSION AND FINDINGS

Because the indictment charges Turner with unlawfully possessing a firearm in furtherance of a drug trafficking crime, the government may seek Turner's detention pending trial. *See* 18 U.S.C. § 3142(f)(1); Indictment, ECF No. 3. Turner argues that the conditions set by Judge Bemporad would adequately ensure his future appearances and community safety. ECF No. 29 at 2. The government contends that Turner is a flight risk and a danger to the community. ECF No. 26 at 6. The Court agrees with the government. Turner's alleged possession of firearms in connection with drug trafficking, the weight of the evidence against him, his history of missing court appearances, his pending murder charge, and his alleged violation of release conditions weigh strongly in favor of pretrial detention. Upon consideration of the Bail Reform Act's four-factor test, the Court will order Turner detained pending trial.

### A. Turner Has Rebutted the Presumption of Danger to the Community

Because Turner was charged with a § 924(c) offense in an indictment, the Court must presume that no condition or combination of conditions could reasonably assure the safety of the community. *See* 18 U.S.C. § 3142(e)(3); Indictment, ECF No. 3; *see also United States v. Diaz*, No. 3:08-cr-267 (SAF), 2008 WL 4561561, at *3 (N.D. Tex. Oct. 9, 2008) (explaining that "an indictment provides probable cause that a defendant committed an offence . . . sufficient to trigger the statutory presumption" in 18 U.S.C. § 3142(e) (citation omitted)). Turner thus bears the burden

of producing rebutting evidence. *Rueben*, 974 F.2d at 586. He has done so. At the December and April hearings, Turner produced evidence (1) showing strong family support from his girlfriend and mother and (2) explaining that his prior failures to appear stemmed from miscommunications with his attorney, who had passed away without Turner realizing. *See, e.g.*, 12/21/21 Tr. 24:6–25:24. This evidence rebuts the inference that Turner's past absences indicate a willingness to shirk court appearances. And it supports a premise that Turner's family could control his inclinations to traffic drugs or possess firearms, mitigating his danger to the community. Regardless, the presumption does not "totally disappear[] from the judge's consideration after the defendant comes forward with evidence," *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989), and "remains in the case [as] a factor to be considered by the judicial officer," *Fortna*, 769 F.2d at 251. The Court therefore considers the presumption as a factor among those that follow.

### B. The Nature and Circumstances of Turner's Offense

Turner is accused of offenses involving firearms and potential drug trafficking—serious offenses. The government proffered evidence that Turner possessed firearms, significant quantities of marijuana, and paraphernalia indicating drug distribution. "[T]he risk of continued narcotics trafficking on bail does constitute a risk to the community." *Rueben*, 974 F.2d at 586 (citing *Hare*, 873 F.2d at 798); *see, e.g.*, *United States v. Pineda-Diaz*, No. 3:20-cr-004 (KGS), 2020 WL 2747421, at *3 (N.D. Tex. May 26, 2020) (finding a "significant risk of harm to the community" based on evidence of "substantial drug trafficking"); *Diaz*, 2008 WL 4561561, at *3 (denying release based, in part, on a defendant who was "very likely [to] continue to engage in illegal drug trafficking if released"). And, though possessing a firearm may not be inherently dangerous to the community, a "loaded firearm . . . has the great potential to escalate into violence." *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020). The "dangerous

combination" of "guns and drugs" present here are highly probative of Turner's danger to the community. *Smith v. United States*, 508 U.S. 223, 240 (1993); *see also United States v. Johnson*, No. 2:21-cr-045 (MJK), 2021 WL 3271344, at *5 (N.D. Tex. July 29, 2021) (finding that defendants were "dangerous to the community" based on their "possess[ion] of firearms in furtherance of drug trafficking"). Accordingly, the Court finds that the nature and circumstances of the offenses charged weigh in favor of detention.

### C. The Weight of the Evidence Against Turner

The weight of the evidence against Turner also counsels detention. The government has seized firearms and drug paraphernalia from Turner's apartment and proffered testimony regarding SAPD's investigation. The amount of evidence seized in Turner's apartment is overwhelming and favors detention. Even if, as some courts have held, this factor involves not the weight of evidence of *guilt* but the weight of evidence of *dangerousness*, the factor still supports detention. *See United States v. Brown*, 538 F. Supp. 3d 154, 168 n.4 (D.D.C. 2021) (collecting cases) The seizure of six firearms and large quantities of marijuana from Turner's apartment—while Turner was under indictment for murder—suggests that Turner would be a danger to the community if released.

Defense counsel has argued that the search of Turner's apartment may have been improperly conducted. Evidence shows that Turner refused to consent to a search of his apartment and that the officers obtained a search warrant only after entering the apartment. This objection does not convince the Court. The Bail Reform Act expressly provides that "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information" at a detention hearing. 18 U.S.C. § 3142(f). A judicial officer may, therefore, "rely on matters brought out at the hearing which would not be considered as 'evidence' under traditional trial standards." *Fortna*, 769 F.2d at 250; *see United States v. Hightower*, 203 F.3d 836

7

(10th Cir. 2000) (holding that "until the validity of [a suppression] order has been decided," a court should "consider the facts sought to be suppressed as if admissible"); *United States v. Apker*, 964 F.2d 742, 744 (8th Cir. 1992) (concluding it "appropriate to consider challenged evidence in detention hearings"); *United States v. Angiulo*, 755 F.2d 969, 974 (1st Cir. 1985) (holding that a court may rely on materials "at least until a court has decided that the material was not obtained legally"); *but see United States v. Taylor*, 289 F. Supp. 3d 55, 67 (holding that "courts should disregard, or at least place diminished reliance on, suppressed evidence in applying the 'weight of the evidence' factor"). To be sure, a subsequent motion to suppress could provide grounds to reopen a detention proceeding. *See United States v. Peralta*, 849 F.2d 625, 627 (D.C. Cir. 1988) (per curiam). But that issue is not before the Court. In accordance with § 3142(f)'s statutory directive and caselaw from the Fifth Circuit and other courts of appeals, the Court has considered the government's proffered evidence in its entirety. The weight of that evidence is strong.

### D. Turner's History and Characteristics

Turner's history and characteristics also weigh in favor of detention. The Bail Reform Act requires a court to consider "available information" concerning a defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). And—relevant here—a court must consider "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial." *Id.* § 3142(g)(3)(B).

These considerations, as a whole, support detention. Start with Turner's family ties. Turner's girlfriend and mother both testified in his support. Before his detention on this federal charge, Turner had resided with his girlfriend. His mother also testified that, if Turner were

8

released to a halfway house, she would provide transport for his court appearances. Testimony about family ties, however, "shed[s] no light on the risk that [a defendant] would continue to deal in drugs." *United States v. Muñoz*, 983 F.2d 232, 1993 WL 3677, at *3 (5th Cir. 1993) (unpublished table disposition). And Turner's girlfriend was "surprise[d]" that his federal charges "involved firearms" when informed during Judge Bemporad's hearing. 12/21/21 Tr. 18:20–21. Family ties indicate whether those with close relationships to a defendant can "assert any appreciable control, either physical or emotional," over a defendant and his actions. *United States v. Howard*, No. 4:06-cr-86 (TRM), 2006 WL 3300462, at *4 (N.D. Tex. Oct. 19, 2006). The Court remains concerned whether Turner's family could exercise that control, especially if they are unaware about his allegedly criminal acts.

More importantly, Turner's conduct while released pending trial shows a disrespect for the law impacting his status both as a flight risk and danger to the community. *See* 18 U.S.C. § 3142(g)(3)(B). Turner has a history of failing to attend his court appearances. *See* ECF No. 29 at 3 (conceding that he did not appear for the "beginning stages" of his hindering-apprehension charge). He committed the offenses in this case while released for a pending murder charge. And he violated his pretrial-release conditions by accumulating six firearms. This history reflects an individual willing to disregard court-ordered mandates and gives the Court no assurance that Turner would abide by its future orders. The Court therefore finds that Turner's history and characteristics weigh toward pretrial detention.

### E. The Nature and Seriousness of the Danger Posed by Release

The final factor—the danger posed by Turner's release—also supports pretrial detention. Turner presents identifiable and articulable threats to his community. *Cf. Munchel*, 991 F.3d at 1282 (quoting *Salerno*, 481 U.S. at 751). First, the threat of drug trafficking. Turner possessed

large quantities of marijuana with equipment evincing an intent to distribute. Second, the threat of possessing a firearm. Turner's conduct resulted in a gunshot piercing the apartment of a woman and her young child. Finally, the threat that he will disregard conditions of release. Turner flagrantly ignored his conditions of release by possessing marijuana and firearms. And he did all of this while awaiting trial for *murder*. The Court is hard-pressed to believe that Turner would adhere to conditions of release when he has already shown his willingness to violate them.

Turner poses a threat to disregard court-ordered conditions of release, which is probative of his flight risk. And the threat he poses to distribute drugs and obtain firearms indicates his dangerousness to the community. This factor thus weighs in favor of pretrial detention.

*    *    *

In short, the Court finds that the nature and character of the charged offenses, the weight of the evidence, Turner's history and characteristics, the potential danger that Turner poses to the community, and the rebuttable presumption for § 924(c)-related charges support Turner's detention pending trial. Based on Turner's failure to appear in the past and disregard for release conditions, the Court finds by a preponderance of the evidence that no condition or combination of conditions would reasonably assure Turner's appearance as required. *See* 18 U.S.C. 3142(e)(1). Additionally, the Court finds by clear and convincing evidence that no condition or combination of conditions of release could reasonably assure the safety of other persons and the community. *See id.*

## IV.   CONCLUSION

For the reasons above, the Court will **GRANT** the government's motion and **ORDER** the defendant detained pending trial. An order of detention accompanies this memorandum opinion.

Date: April 21, 2022

Royce C. Lamberth
United States District Judge