IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| *Plaintiff,* | § § | SA-21-CR-00494-OLG |
| vs. | § § § | |
| (1) JONTE DESEAN TURNER, | § § | |
| *Defendant.* | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Chief United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendant's Motion to Suppress [#39] and Defendant's *Franks* Motion to Suppress [#46], which were referred to the undersigned for a report and recommendation pursuant to Western District of Texas Local Rule CV-72 and Appendix C. The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendant's motions be **DENIED**.

**I.  Background**

Defendant Jonte Desean Turner was charged in November 2021 in a three-count indictment with carrying/possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count 1), illegal receipt of a firearm by a person under indictment in violation of 18 U.S.C. § 922(n) (Count 2), and possession with intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1)/(b)(1)(D) (Count 3). (Indictment [#3].)  The firearms and marijuana underlying Turner's indictment were discovered

1

as a result of a warrantless search of Turner's apartment on January 27, 2021. After conducting what law enforcement officers describe as a "protective sweep" of the apartment, law enforcement obtained a search warrant to seize the firearms and marijuana and to conduct a more thorough search of Turner's apartment.

Turner has moved to suppress this evidence on the basis that the Government has not satisfied its burden to demonstrate that the warrantless search was permitted under one of the recognized exceptions to the Fourth Amendment's warrant requirement. Turner's second motion to suppress alleges that the search warrant was obtained based on false information contained in the affidavit submitted in support of the warrant in violation of *Franks v. Delaware*, 438 U.S. 154 (1978).

The undersigned held a live evidentiary hearing on the motions on June 14, 2022, at which counsel for the Government and Turner appeared, presented and examined witnessed, and presented oral argument to the Court. San Antonio Police Department ("SAPD") Patrol Officer Brian Bonenberger, SAPD Detective Chad Bendele, SAPD Sergeant William Roberts, and SAPD Detective Ronald Soto provided testimony at the hearing. In addition to the testimony of these SAPD officers, the parties introduced numerous exhibits into evidence, which included incident reports from the search, photographs of the incident, and video from the officers' body-worn cameras. At the close of the hearing, the undersigned provided the parties with the opportunity to submit post-hearing briefing. Both the Government and Turner filed post-hearing briefs for the Court's consideration [#59, #60]. The undersigned has considered these filings in addition to the responses and replies of the parties to Defendant's motions [#41, #47, #50].

## II.  Motion to Suppress Evidence Resulting from Warrantless Search

Turner argues the evidence underlying his indictment must be suppressed because it was illegally obtained through a warrantless search of his apartment. The Fourth Amendment protects against unlawful searches and seizures and demands that entry into an individual's home be supported by consent or a valid warrant. *United States v. Jones*, 239 F.3d 716, 719 (5th Cir. 2001). Because Turner's apartment was searched without a warrant or his consent, the Government must show by a preponderance of the evidence that the seizure was permissible under one of the recognized exceptions to the Fourth Amendment's requirements. *United States v. Jeffers*, 342 U.S. 48, 51 (1951); *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001).

The Government argues that the evidence before the Court establishes that the search at issue was a lawful protective sweep of Turner's apartment that was permissible under two exceptions to the warrant requirement—the emergency-aid exception and the exigent-circumstances exception. Under the emergency-aid exception, an officer may execute a warrantless search where there is an objectively reasonable basis for believing that medical assistance is needed or persons are in danger. *Michigan v. Fisher*, 558 U.S. 45, 49 (2009); *see also Brigham City, Utah v. Stuart*, 547 U.S. 398, 406 (2006). The exigent-circumstances exception applies "where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate." *Arkansas v. Sanders*, 442 U.S. 753, 759 (1979), *overruled in part on other grounds*, *California v. Acevedo*, 500 U.S. 565 (1991). The undersigned agrees that the Government has satisfied its evidentiary burden to demonstrate that the warrantless search of Turner's apartment was permissible under the exigent-circumstances exception, regardless of whether the

emergency-aid exception was satisfied. The Court therefore need not and will not address the parties' arguments regarding the emergency-aid exception.

**A.     Evidentiary Record**

The evidence adduced at the Court's live hearing establishes that SAPD received a call from an unidentified resident of the Siena on Sonterra Apartments (where Turner also lived) at 6:46 p.m. on January 27, 2021, regarding a possible firearm discharge. The caller reported hearing a loud popping sound and yelling down the stairwell of the apartment building. Officer Bonenberger was dispatched to the apartments and, while walking around the building, encountered a resident walking her dog who lived in Apartment 2206 on the second floor. This resident also reported hearing a loud bang that she thought had come from the third floor in Apartment 2306 about 20 minutes prior to Officer Bonenberger's arrival. Officer Bonenberger then conducted brief surveillance on the third floor and knocked on the door of Apartment 2306 but received no answer. He left the apartment at that time to work on notes related to the incident in a parking lot across from the apartment building.

At approximately 7:21 p.m., SAPD received another call from a resident of the Siena on Sonterra Apartments, who identified herself as Ms. Zuniga, the resident of Apartment 2202. Ms. Zuniga also reported shots being fired around the same time as the earlier report and claimed to have found a bullet hole in the wall of her apartment shared with Apartment 2204, where Turner lived. Because this call reported a shooting in progress, SAPD dispatched multiple officers to the building.

Detective Bendele was one of the dispatched officers, and at approximately 7:29 p.m., while walking the perimeter of the apartment building, he came in contact with Turner sitting on a bench. Turner confirmed that he was the resident of Apartment 2204 and provided consent for

Detective Bendele to search his person but refused to consent to a search of his apartment. A cell phone, a large sum of money rubber banded together, and Turner's apartment keys were found on his person. Turner told Detective Bendele that no one else was in the apartment at the time.

Meanwhile, Officer Bonenberger arrived at Ms. Zuniga's apartment, Apartment 2202, at 7:23 p.m., and Ms. Zuniga relayed to him that immediately after the gun shot, she had heard commotion and running in the hallway coming from Apartment 2204. Ms. Zuniga, who was in her apartment with her infant child at the time of the shooting, showed Officer Bonenberger the bullet hole in her wall. She also pointed out that the corner of her apartment adjacent to Apartment 2204 frequently smells of marijuana. Officer Bonenberger was able to locate where the bullet came through the wall, skimmed the carpet, and became partially lodged in Ms. Zuniga's husband's computer. At that time, Officer Bonenberger concluded, based on his training and experience, that the bullet had traveled through the wall from the adjacent Apartment 2204, whether the firearm was discharged from inside Apartment 2204 or the bullet merely passed through the apartment after being fired outside of it.

Officer Bonenberger then began coordinating with other SAPD officers regarding their next steps, which included securing the building, evacuating the surrounding apartments, and addressing whether there might be someone injured inside Apartment 2204 or whether the person who fired the gun might still be hiding in the apartment. At that time, SAPD placed an armed officer outside the door of Apartment 2204 in case anyone attempted to escape. Thereafter, Sergeant Roberts arrived on the scene as the supervising officer and began directing the evacuation of surrounding apartments to secure the building prior to attempting entry of Apartment 2204. By 7:43 p.m., Ms. Zuniga had gathered her infant child and evacuated her own

apartment. As she departed, she expressed concern regarding the safety of other occupants of Apartment 2204, specifically for the small child she said lived there with Turner.

Around this same time, Sergeant Roberts received information that Turner had a criminal history. Sergeant Roberts again attempted to obtain consent to search Apartment 2204, but Turner refused. Sergeant Roberts's suspicions were aroused, and he testified that the situation was unusual, as a "normal and reasonable person" would want to find out who had discharged a weapon in his apartment. SAPD then decided to conduct a protective sweep of Apartment 2204 to search for bodies or injured persons and to dispel any danger to officers and other occupants of the apartment building, given that obtaining a search warrant could take an hour or more. Once the sweep team entered the apartment around 7:54 p.m., the officers located a bullet hole in the wall directly on the other side of Ms. Zuniga's apartment with dry wall powder beneath it. Strangely, the bullet hole had already been partially filled with what appeared to be spackle, which was still wet to the touch. While sweeping the apartment for anyone who might be hiding or any injured victims, the officers discovered several firearms and magazines with ammunition on the kitchen counter in plain view. No victims or suspects were found in the apartment during the sweep, which lasted no more than two minutes.

Thereafter, Detective Soto obtained a warrant to do the more extensive search of Apartment 2204 and to seize the weapons found in plain view. Detective Soto testified that he obtained information regarding the incident from a conversation with Detective Corn and included this information in his search warrant affidavit. Ultimately, the officers seized six firearms, $4,720 in U.S. currency found in a safe, and approximately five pounds of marijuana.

B.      **Exigent-Circumstances Exception**

The Government has established by the preponderance of the evidence that the warrantless search of Turner's apartment was justified under the exigent-circumstances exception to the warrant requirement. As previously noted, the exigent-circumstances exception applies "where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate." *Sanders*, 442 U.S. at 759. "Exigent circumstances include those in which officers reasonably fear for their safety, where firearms are present, or where there is a risk of a criminal suspect's escaping or fear of destruction of evidence." *United States v. Rico*, 51 F.3d 495, 501 (5th Cir. 1995). In order to enter a person's residence, even under exigent circumstances, law enforcement first must have probable cause to believe that contraband is inside or that an illegal act is taking place. *United States v. Newman*, 472 F.3d 233, 236 (2006).

In evaluating whether exigent circumstances exist, the Fifth Circuit has found relevant the following factors:

(1) the degree of urgency involved and amount of time necessary to obtain a warrant;
(2) the reasonable belief that contraband is about to be removed;
(3) the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought;
(4) information indicating the possessors of the contraband are aware that the police are on their trail; and
(5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.

*Rico*, 51 F.3d at 501. In evaluating exigency, courts "consider the appearance of the scene of the search in the circumstances presented as it would appear to reasonable and prudent men standing in the shoes of the officers." *United States v. Rodea*, 102 F.3d 1401, 1405 (5th Cir.1996) (internal quotations and citation omitted). If reasonable minds could differ, courts "should not

second-guess the judgment of experienced law enforcement officers concerning the risks of a particular situation." *United States v. Blount*, 123 F.3d 831, 838 (5th Cir. 1997).

Here, the evidence before the Court establishes that Officer Bonenberger and Sergeant Roberts had probable cause to believe that deadly conduct had occurred inside Turner's apartment, which is a criminal offense under the Texas Penal Code. *See* Tex. Pen. Code § 22.05(b) (providing that deadly conduct is considered a felony when a person "knowingly discharges a firearm at or in the direction of . . . a habitation . . . and is reckless as to whether the habitation is occupied"). Again, Officer Bonenberger observed a bullet hole in the shared wall between Apartment 2202 and Turner's apartment and based on the trajectory of the bullet believed it had originated in or passed through Apartment 2204. Sergeant Roberts similarly testified he believed the bullet to have traveled from Turner's apartment based on the way the bullet hole was angled and how it traveled into Ms. Zuniga's apartment. Despite searching Turner's person, law enforcement had not yet located the discharged firearm. Additionally, law enforcement were aware that Turner had a criminal history and had repeatedly refused to consent to the search of his apartment. The SAPD officers were not required to credit Turner's statement that there was no one in the apartment under these circumstances, especially given the statement of Ms. Zuniga that a small child lived in the apartment with Turner. Based on this information, it was objectively reasonable for SAPD officers to believe someone could still be armed and dangerous inside Turner's apartment or that they would find the firearm, a victim, a small child (who could be hurt or unsupervised and therefore in danger), or other evidence of a crime inside.

The Fifth Circuit has evaluated exigency in the context of at least one "shots fired" call in a residential area. *See Tamez v. City of San Marcos, Tex.*, 118 F.3d 1085 (5th Cir. 1997). In *Tamez*, the Fifth Circuit upheld the warrantless entry and search of a home where officers

responded to a "shots fired" call at night; the defendant, a recognized suspect in another crime, had fired a pistol in his back yard; the officers could hear noise in the house; and the officers had not yet located the firearm at issue or determined that there were no shooting victims in the house. *Id.* at 1087–88, 1096. Under these circumstances, the Fifth Circuit concluded that a reasonable officer could have believed the safety of the general public and officers was at issue. *Id.* at 1095–96.

The Eighth Circuit has similarly concluded that a "shots fired" call created exigent circumstances to justify a warrantless search of a home. *See United States v. Arcobasso*, 882 F.2d 1304 (8th Cir. 1989). In *Arcobasso*, police officers responded to a nighttime call indicating that shots had been fired in Arcobasso's residence. *Id.* at 1305. When they arrived, the officers heard the sound of the trigger being pulled on an unloaded weapon and saw Arcobasso flee through an open window in an attempt to escape. *Id.* The officers searched Arcobasso for weapons but found none. *Id.* When they questioned Arcobasso as to whether there were any other occupants inside, he responded, "Rick." *Id.* Under these circumstances, the officers' belief that there could be a victim or another person posing a danger to officer safety created exigent circumstances to justify the warrantless search. *Id.* at 1307.

Although the officers in this case did not hear any movement inside the apartment and Turner stated that no one was inside apartment, as in *Arcobasso* and *Tamez*, the totality of the circumstances still created exigent circumstances justifying the warrantless search of Turner's apartment. The warrant ultimately obtained by law enforcement to search the apartment was not signed until after 10:00 p.m. and testimony at the suppression hearing indicated that it could take at least an hour or more to obtain a warrant under the surrounding circumstances. SAPD's decision to conduct a protective sweep of Apartment 2204 to search for victims and to dispel any

danger to officers and residents of the apartment building was reasonable, in light of the discharge of a weapon, the suspicion that the weapon and a suspect or victim remained inside the apartment, and the information that a young child resided inside the apartment with Turner.

### III. Motion to Suppress Evidence Under *Franks v. Delaware*

Turner also seeks suppression of the evidence underlying his indictment based on allegedly false statements included in the search warrant affidavit authored by Detective Soto. The Court should also deny this motion.

Where a search is executed pursuant to a search warrant, as here, the warrant may only be issued upon a finding of probable cause. *United States v. Brown*, 941 F.2d 1300, 1302 (5th Cir. 1991). A "warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *Franks v. Delaware*, 438 U.S. 154, 165 (1978). Probable cause exists "'where the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed." *United States v. Rich*, 407 F.2d 934, 936 (5th Cir. 1969) (internal quotation and citation omitted). When a warrant affidavit contains false information made intentionally or with reckless disregard for the truth, courts must "excise the offensive language from the affidavit and determine whether the remaining portion would have established the necessary probable cause." *United States v. Cavazos*, 288 F.3d 706, 709–10 (5th Cir. 2002). A defendant carries the burden of making a substantial preliminary showing that the affiant of the warrant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in the warrant affidavit and thus the remaining part of the affidavit would

not support a finding of probable cause.  *United States v. Arispe*, 328 Fed. App'x 905, 906 (5th Cir. 2009).  Turner has failed to carry this burden.

Turner argues that there are material misrepresentations in Detective Soto's affidavit. The search warrant affidavit states:

> When officers arrived at the scene, they discovered someone inside apartment #2204 shot a firearm that went through his wall into the adjacent apartment. The bullet went into apartment #2202, where two people reside. When officers arrived, they were given a key to apartment #2204 by one of the occupants. To secure the scene, officers conducted a protective sweep of apartment #2204 and did not find anybody inside. During the protective sweep, officers discovered several firearms inside the apartment that someone potentially used to commit the crime. Officers were unable to obtain written consent to process the crime scene, and this case is under the San Antonio Police Department case number SAPD21017537.

Turner argues that the affidavit contains factual misrepresentations because no officer knew that someone inside Apartment 2204 had in fact fired a gun; they only suspected this fact based on the bullet hole and reports of a popping sound and people running from that apartment. Additionally, Turner argues that the statement about the key being given to SAPD officers is false because Turner did not give the key willingly to law enforcement.  Finally, Turner argues that the statement that the firearms found inside his apartment were connected to a crime is mere conjecture.  Turner maintains that without these statements, there was no probable cause to issue a warrant.

Turner has not made a sufficient showing that Detective Soto knowingly and intentionally or recklessly disregarded the truth or made a false statement in his warrant affidavit. Detective Soto obtained the information obtained in the search warrant affidavit from Sergeant Roberts and Detective Corn, who informed him that SAPD officers entered Turner's apartment at around 7:54 p.m. to conduct a protective sweep, during which they observed in plain view

several firearms and ammunition and a bullet hole on the shared wall with Apartment 2202 that had been recently filled with fresh spackle. Detective Bendele testified that he obtained an apartment key from Turner during the consent search of his person. Detective Soto testified that he confirmed that the facts in the affidavit were correct with Detective Corn and provided a copy of the affidavit for Officer Bonenberger's review of its accuracy. There is no basis for excising the search warrant affidavit in this case or suppressing the evidence based on *Franks v. Delaware*.

## IV.  Conclusion and Recommendation

Having considered Defendant's motions to suppress, the Government's responses thereto, Defendant's reply, the evidence adduced at the live hearing, the arguments of counsel, and the post-hearing briefing, the undersigned recommends that Defendant's Motion to Suppress [#39] and Defendant's *Franks* Motion to Suppress [#46] be **DENIED**.

## V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the

proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 12th day of August, 2022.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE